# UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

| | | |
|---|---|---|
| FIRST TIME VIDEOS, LLC, | ) | |
| | ) | |
| | ) | **Appeal No. 13-14717-BB** |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | December 5th, 2013 |
| PAUL OPPOLD, | ) | |
| | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

## INITIAL BRIEF OF APPELLANT PAUL OPPOLD

From the Middle District of Florida
Civil Action No. 6:12-CV-01493-CEH-KRS

Graham W. Syfert, Esq.,P.A.
For Appellant Paul Oppold

By: s/ Graham W. Syfert
    Graham W. Syfert
    Florida Bar #39104
    Georgia Bar #881027
    1529 Margaret St, Unit 2
    Jacksonville, FL 32204
    Phone: (904) 383-7448
    Fax: (904) 638-4726
    graham@syfert.com

**First Time Videos v. Paul Oppold, Appeal No. 13-14717-BB**

## CORPORATE DISCLOSURE STATEMENT

Oppold, in alphabetical order, lists the trial judge(s), and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

6881 Forensics

Banas Law Firm

Brett Gibbs, Esq.

David K. Friedland, Esq.

First Time Videos, LLC

Friedland Vining, P.A.

FTV Cash, Inc.

FTV, Inc.

George Banas, Esq.

Graham W. Syfert

Graham W. Syfert, Esq., P.A.

Jamie Rich Vining, Esq.

John Steele, Esq.

Jonathan Torres, Esq.

Joseph Perea, Esq.

Joseph Perea, P.A.

Judge Charlene Edwards Honeywell

Law Offices of Jonathan Torres, Esq.

Lewis Roca Rothgerber

Magistrate Judge Karla R. Spaulding

Matthew Wasinger, Esq.

Meng Zhong, Esq.

Michael J. McCue, Esq.

Paul Duffy, Esq.

Paul Hansmeier, Esq.

Paul Oppold

Prenda Law, Inc.

RHS Productions, Inc.

Robert Hooman Simyar

Under the Bridge Consulting

Wasinger Law Office, PLLC

**STATEMENT REGARDING ORAL ARGUMENT**

This case presents important issues regarding Rule 41 interpretation and jurisdiction.  Appellant respectfully requests oral argument as Appellant believes that it would assist the Court in the determination of these issues.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................... ii

STATEMENT REGARDING ORAL ARGUMENT ................................. iv

I.  JURISDICTION AND TIMELINESS ....................................................... 1

II. STATEMENT OF ISSUES ....................................................... 1

III.  STATEMENT OF THE CASE ............................................................. 2

A.  First Voluntarily Dismissed Miami Case .............................................. 2

B.  Second Voluntarily Dismissed Orlando Case and Motion for

Attorney's Fees ........................................................................... 3

IV.  STATEMENT OF FACTS .................................................................... 5

V.  SUMMARY OF THE ARGUMENT .................................................... 10

VI.  ARGUMENT.................................................................................. 12

A.  Did the District Court have subject matter jurisdiction to award

Oppold an adjudication on the merits under the two-dismissal rule?....... 12

1.  Rule 41(a)(1)(B) created ancillary jurisdiction to conduct a privity of

the parties analysis and enter an adjudication on the merits.................. 13

2.  The prevailing Ninth Circuit rule regarding jurisdiction could be

adopted, but it creates jurisdictional paradox ........................................ 18

B.  A privity of the parties analysis and the relatedness of cases is not a

justiciable case or controversy sufficient to form a third case................. 21

1. Can Abrahams continue to file infinite actions for declaratory relief that will be dismissed for lack of subject matter jurisdiction? Or would his counsel be subject to sanctions?....................................................... 22

2.  Abrahams and Oppold are the same controversy of rule interpretation ............................................................................................................. 23

C.  Oppold is a prevailing party under *Buckhannon* by his adjudication upon the merits granted by the District Court. .......................................... 25

D.  Prevailing party status under Rule 41(a)(1)(B) promotes the purposes of the Copyright Act and public policy ....................................................... 33

VII.  CONCLUSION ..................................................................................... 35

CERTIFICATE OF COMPLIANCE............................................................ 39

CERTIFICATE OF SERVICE ..................................................................... 40

**TABLE OF AUTHORITIES**

**Cases**

*Abrahams v. Hard Drive Productions, Inc.*, 3:12-cv-01006-JCS, 2012 WL
5499853 (N.D. Ca. Nov. 13, 2012) ............................................................ 20

*Aero-Colours, Inc. v. Propst*, 833 F.2d 51 (5th Cir. 1987) .......................... 14

*AF Holdings v. Patel*, 2:12-cv-00262 (N.D. Ga.) ......................................... 29

*Already v. Nike*, 113 S. Ct. 721, 568 U.S. ____, 184 L. Ed. 2d 553 (2013). 21

*American Cyanamid v. McGhee*, 317 F.2d 295 (5th Cir. 1963). 14, 16, 25, 29

*Asx Inv. Corp v. Newton*, 183 F. 3d 1265 (11th Cir. 1999) .......................... 13

*Bonner v. City of Pritchard*, 661 F. 2d 1206 (11th Cir. 1981) ..................... 31

*Boy Racer v. Williamson*, 2:11-CV-03072 (E.D. Ca.) .................................. 24

*Buckhannon v. W. Va. Dep't of Health,* 532 U.S. 598 (2001). 4, 5, 11, 12, 26,
28, 31, 33

*Commercial Space Management Co. v. Boeing Co.*, 193 F. 3d 1074 (9th Cir.
1999) .............................................................................. 14, 19, 20, 22, 24

*Cook v. Randolph County*, 573 F. 3d 1143 (11th Cir. 2009) ......................... 28

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ............................. 13

*Cordoba v. Dillard's, Inc.*, 419 F.3d 1169 (11th Cir. 2005) ......................... 23

*CSX Transp. Inc. v. Brotherhood of Maintenance*, 327 F.3d 1309 (11th Cir.
2003) ...................................................................................................... 22

*DeliverMed v. Schaltenbrand*, 12-3773, 12-3774, 2013 WL 5524862 (7th

　Cir. October 7th, 2013)........................................................................ 30, 34

*Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199 (11th Cir. 2012) ....... 25

*Englehardt v. Bell & Howell*, 299 F. 480 (8th Cir. 1962) ........................... 15

*Fogarty v. Fantasy*. 510 U.S. 517 (1994) ................................................ 7, 38

*FTV v. Does 1-76*, 1:12-CV-20921 (S.D. FL) ........................................... 2, 3

*Hertz Corp. v. Alamo Rent-A-Car*, 16 F. 3d 1126 (11th Cir. 1994). ............ 17

*Ingenuity 13 v. Doe*, 2:12-CV-08333, 2013 WL 1898633 (C.D. Cal. May 6,

　2013) ........................................................................................................ 19

*Johnson v. Florida*, 348 F. 3d 1334 (11th Cir. 2003)................................... 27

*Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962) ........................................... 25

*Marconi Wireless Co. v. U.S.*, 320 U.S. 1 (1943)......................................... 34

*MiTek Holdings, Inc. v. Arce Eng. Co.*, 198 F. 3d 840 (11th Cir. 1999) ..... 38

*Pilot Freight Carriers, Inc. v. International Bhd. of Teamsters*, 506 F.2d 914

　(5th Cir. 1975) ........................................................................................ 14

*Rivera v. PNS Stores, Inc.*, 647 F. 3d 188 (5th Cir. 2011) .......................... 15

*Riveria Distributors v. Jones,* 517 F.3d 926 (7th Cir. 2008)........................ 28

*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001) .............. 27

*Smalbein v. City of Daytona Beach*, 353 F.3d 901 (11th Cir. 2003)............ 26

*Smith v. GTE Corp.*, 236 F. 3d 1292 (11th Cir. 2001) ................................. 12

*Terry v. Ohio*, 392 U.S. 1 (1968) .................................................................. 31

*Thorp v. Scarne*, 599 F.2d 1169 (2nd Cir. 1979) .......................................... 32

*Utility Automation 2000 v. Choctawatchee*, 298 F. 3d 1238 (11th Cir. 2002)

.............................................................................................................. 31

*Williams v. Ezell*, 531 F.2d 1261 (5th Cir. 1976) ........................................ 14

*Yesh Music v. Lakewood Church*, No. 12-20520, 2013 WL 4103601 (5th

Cir. Aug 14th, 2013) .................................................................... 15, 16, 17

**Statutes**

17 U.S.C. § 505 ........................................................................................ 9, 20

28 U.S.C. § 1291 ........................................................................................... 1

28 U.S.C. § 1338(a) ...................................................................................... 1

28 U.S.C. § 1927 ......................................................................................... 23

**Other Authority**

Black's Law Dictionary, 4th Edition (1968) ................................................ 31

Black's Law Dictionary, 7th Edition (1999) ................................................ 31

Fed. R. Civ. P. 41 ................................................................................. passim

*For One Litigant's Sole Relief*, 77 Cornell L. Rev. 905 (1991-1992) (Ziff, R.)

.............................................................................................................. 23

*Moore's Federal Practice 3d* § 41 ......................................................... 15, 28

*Voluntary Dismissal by Order of the Court*, 48 Notre Dame L. 446 (Mentz,

L) (1972)..................................................................................................... 15

## I.  JURISDICTION AND TIMELINESS

Subject matter jurisdiction existed in the Southern District and Middle District of Florida pursuant to 28 U.S.C. § 1338(a) as the two complaints filed by First Time Videos, LLC accused Oppold of infringement of a work registered under the Copyright Act.   It is an unsettled question whether the District Court had jurisdiction to enter an order stating that Oppold had earned an adjudication on the merits following a notice of voluntary dismissal.  Because the order also dispensed of an argument for attorney's fees- under 28 U.S.C. § 1291- it ended all litigation and resolved all pending questions and this appeal is before this Court upon questions of finality.

The order confirming Oppold's adjudication on the merits and denying prevailing party status under the Copyright Act was entered on September 16th, 2013.  Doc. 40.  A timely notice of appeal was filed with the District Court on October 8th, 2013.  Doc. 44.

## II. STATEMENT OF ISSUES

**A.**  Does a second District Court have jurisdiction to award an adjudication on the merits pursuant to the two-dismissal rule?

**B.** Privity of the parties and relatedness of cases is not a justiciable case or controversy for a third court after a second unilateral notice of voluntary dismissal.

1

**C.** An adjudication on the merits pursuant to the two-dismissal rule is sufficient to confer prevailing party status under the fee shifting provision of the Copyright Act.

## III.  STATEMENT OF THE CASE

### A.  First Voluntarily Dismissed Miami Case

First Time Videos, LLC, Nevada Corporation ("FTV") filed an amended complaint in the Southern District of Florida against seventy-six John Doe defendants alleging willful infringement of the registered work "FTV - Tiffany".  *FTV v. Does 1-76*, 1:12-CV-20921, Doc. 5, Doc. 5-1 (S.D. FL) ("*Miami Case*").   The amended complaint alleged copyright infringement, civil conspiracy, and contributory infringement against multiple "John Doe" defendants and included requests for injunctive relief and attorney's fees.  *Id.*

After obtaining Oppold's home address through *ex parte* early discovery, FTV sent Oppold a letter demanding payment in settlement of that case.  Doc. 37-4.  The letter referenced the *Miami Case* and accused Oppold of downloading the work "FTV - Tiffany" on February 20th, 2012, at 9:59:54 PM UTC and referencing the IP address of 97.102.232.95.  *Id.* Shortly after the demand letter was received, agents of FTV communicated with Oppold by telephone.  Doc. 14, pg 2.   Without serving Oppold, FTV

2

filed a notice pursuant to Rule 41(a)(1) voluntarily dismissing John Doe with the IP address of 97.102.232.95 without prejudice. *Miami Case* at Doc. 33.

**B.  Second Voluntarily Dismissed Orlando Case and Motion for Attorney's Fees**

In July of 2012, three days after Oppold's dismissal from the *Miami Case*, FTV filed a new case naming Oppold in the Middle District of Florida, Tampa Division, alleging copyright infringement- reproduction, distribution, contribution, civil conspiracy, and negligence relating to making copies of the pornographic work "FTV-Tiffany." The alleged copyright infringement occurred again quite specifically on February 20th, 2012 at 9:59:54 PM UTC and referenced the IP address of 97.102.232.95. Doc. 1. FTV again included a demand for injunctive relief and an award of attorney's fees. *Id.* The case was transferred by Plaintiff's motion to the Orlando Division.

On December 5th, 2012, FTV filed a notice of voluntary dismissal without prejudice pursuant to "Rule 41(a)(1)" in the *Orlando Case* and included a dangling prayer for relief requesting the same final disposition. Doc. 29. The sole reason later given for the filing of the dismissal is that a message was conveyed to FTV's local counsel that the client wanted him to

3

do it.  Doc. 36, pg. 3.  No other reason for the filing was ever given and FTV took no action to change the nature of the filing.

On December 6th, 2012, the District Court- as if ruling on a motion *sua sponte*- issued an order dismissing the case against Oppold without prejudice.  Doc. 30.  That same day, Oppold filed a motion for award of attorney's fees- containing technical deficiencies under M.D. Fl. L.R. 3.01- lauding the excellence of his counsel and requesting a 1.6 multiplier.  The motion contained claims of fraud on the court and abuse and harassment. Doc. 31.  Four days later, the District Court entered an order denying Oppold's motion for attorney's fees- without prejudice.  Doc. 32.  On December 12th, Oppold filed the same motion labeled as a second motion for fees, changing no text within the original request other than a certification that he had now discussed the matter with opposing counsel. Doc. 33.   The matter was submitted for R&R.

The R&R found that the *Miami Case* and the *Orlando Case* arose from the same set of facts and circumstances.  Doc. 35, pg 6.  After concluding that an adjudication on the merits resulted, the R&R applied a material alteration test from *Buckhannon v. W. Va. Dep't of Health,* 532 U.S. 598 (2001), stating:

> "It is, nevertheless, unclear whether the adjudication on the merits
> resulting from a second dismissal under Rule 41(a)(1) is the type of

4

judicially sanctioned change in the relationship of the parties required by *Buckhannon* for Oppold to be considered the prevailing party in this case. When a plaintiff dismisses a second time under Fed. R. Civ. P. 41(a)(1), there is no Court approval or entry of judgment. Rather, the case is closed by operation of that Rule. Therefore, I recommend that the court find, under *Buckhannon* that Oppold is not prevailing party simply by operation of the two dismissal rule."

Doc. 35, pg 6-7.

Oppold filed a timely objection to the R&R's various findings of fact and conclusions of law and FTV filed a reply to the objection. Doc. 37; Doc. 39. Adopting only in part the R&R, the order of the District Court confirmed that the second dismissal was an adjudication on the merits and that a previous order was void or somehow without effect. The Court further concluded that although there had been an alteration in the legal relationship of the parties, the change was not judicially sanctioned, stating:

"[A]n 'adjudication on the merits' under that rule does not constitute a '*judicially sanctioned* change in the legal relationship of the parties as required by *Buckhannon* . . . the operation of the two dismissal rule under Rule 41(a)(1) does not render Defendant Oppold a "prevailing party" under the Copyright Act, 17 U.S.C. § 505."

Doc. 40, pg. 6.

Although the court determined that Oppold received an adjudication on the merits, Oppold's prevailing party status was denied under that rationale derived from *Buckhannon*- and he filed this appeal.

**IV. STATEMENT OF FACTS**

5

FTV is a producer of adult entertainment media.  The *Miami Case* complained that seventy-six John Does lead a big parade of willful infringement of the work "FTV - Tiffany."  To gather evidence toward proving this claim, FTV employed a company named 6881 Forensics to monitor infringement online.  *See Miami Case*, Doc. 6-2 at 2 (Declaration of Peter Hansmeier of 6881 Forensics).  Oppold received only demand letters and phone calls from the law firm urging settlement.  Doc. 37-4; Doc. 37, pg. 18 (Oppold's objection to R&R finding that he was "not subjected to harassment or inconvenience" by the filing of the *Miami Case*).  Oppold was dismissed from the first *Miami Case* by unilateral voluntary notice of dismissal without prejudice.  *Miami Case*, Doc. 33.  Whatever motivated this decision, this first unilateral dismissal was made after two separate John Doe Defendants filed a motion for sanctions against FTV.  *Miami Case*, Doc. 30.

When the *Orlando Case* began through separate counsel than the *Miami Case*, Oppold appeared and filed an omnibus motion to dismiss with no exhibits but including a 12(b)(6) argument against the negligence count. Doc. 14.  Oppold also moved for involuntary dismissal under 41(a)(2) claiming that the Plaintiff failed to inform the court of the previous *Miami Case* in violation of court order.  Nearly contemporaneous with the motion, Oppold filed a Notice of Related Cases on the docket listing the existence of

the previous *Miami Case*.  Doc. 15.  In response to the accusation that

counsel failed to disclose related cases, FTV stated that either the cases were

unrelated or that they did not willfully violate any court order because they

*believed* that the cases were unrelated.  Doc. 18 at 4-5.  Throughout the

course of the *Orlando Case*, Oppold was involved in conversation,

negotiation, and preparation for four months with three opposing counsels of

record.

On December 6th, after the order dismissing the case without

prejudice, Oppold moved for award of attorney's fees of $7,525.00 and an

upward multiplier for the excellence of his counsel at a rate of 1.6 against

FTV- arguing that the second dismissal was an adjudication on the merits.

Doc. 31.  Echoing the claims of his earlier Motion to Dismiss, Oppold made

allegations of fraud, and harassment in his fee request.  Oppold's motion for

fees concerned only relatedness of the cases, the operation of Rule

41(a)(1)(B), and an analysis of fees under *Fogarty v. Fantasy*. 510 U.S. 517

(1994).

The R&R suggested that it was unclear if fees should be denied under

a prevailing party analysis, and that no fees should be awarded under the

discretion of the court due to the strength of FTV's copyright claim.  Doc.

35.  Oppold filed a timely objection to multiple findings of fact and

conclusions of law within the R&R, requesting an additional $18,000.00 in attorney's fees for the drafting of the objection and $4,000.00 related to hiring a technical expert to draft a declaration of observations related to the investigation methods of IP address collection of the Plaintiff's agents.   Doc. 37.

In the objection, Oppold made a large showing of exhibits supporting the previous allegations of fraud, FTV's thousands of unilateral dismissals without prejudice nationwide, and further evidence of motivation and harassment.  Doc. 37; Doc. 37-9.  Oppold presented arguments that: 1) additional showings of evidence should not be required to show fraud, abuse, and harassment; 2) an adjudication on the merits under 41(a)(1)(B) is akin to a default judgment and fees should be awarded as a matter of course; 3) First Time Videos is a serial filer of voluntary dismissals in copyright cases; and 4) FTV induces copyright infringement through their agents in efforts of barratry and champerty.  Doc. 37.  The declaration of Delvan Neville, attached to the objection, was a vast compilation of documents and data showing that 6881 forensics placed non-FTV works on a website known as "The Pirate Bay" for public download running a honeypot scheme. Doc. 37-11.  Going even further based on the declaration, Oppold accused

6881 Forensics and Prenda Law of inducing infringement of FTV works through their software configuration.  Doc. 37, pg. 23-24.

In response to the well supported technical declaration of Delvan Neville alleging that 6881 Forensics was aggressively broadcasting files over the bittorrent network, inducing infringement of FTV works, neither FTV nor Prenda Law nor 6881 Forensics could be contacted for response. Local counsel could not contact his client, nor the attorney who hired him to work for FTV, nor any computer forensic organization to dispute the claims of purposeful inducement of copyright infringement by FTV or her agents. Doc. 39, pg. 4 (quoting Doc. 36- earlier Motion to Withdraw- then stating "Plaintiff's counsel is unable to ascertain if Prenda Law was or is an agent of the Plaintiff either de jure or de facto.")

The District Court limited their adoption of the R&R to only that portion that upheld an adjudication on the merits upon a finding of the privity of the parties, and conducted a prevailing party analysis denying fees and costs under 17 U.S.C. § 505.   The District Court did not make any ruling regarding whether the Defendant would be awarded fees under judicial discretion stating that the change in legal circumstance was not judicially sanctioned under *Buckhannon* because it was automatic.  Counsel

for FTV was allowed to withdraw after the order denying the award of fees and Oppold filed this appeal.

## V.  SUMMARY OF THE ARGUMENT

The two-dismissal rule creates a question of jurisdiction that can logically be solved two ways.  Either 1) a District Court is not divested of jurisdiction upon two notices of voluntary dismissal to weigh claim preclusion and award an adjudication on the merits; or 2) confirming the Ninth's *Commercial Space* and effectively eliminate the adjudication on the merits provision from Rule 41 unless *res judicata* is simultaneously suspended and applied.

The first choice is under binding precedent from the Fifth Circuit before 1981 and provides an opportunity to confront long avoided questions- giving the District Courts and their clerks a tool to determine what kind of shift occurs from a Plaintiff to a Defendant when a second voluntary dismissal is filed.  Rule 41 allows a judge in a second case to make determinations regarding claim preclusion.  This holding will create a split with the Ninth Circuit and possibly fracture Rule 41 interpretation in the Fifth.  It will also require a framework for the accurate reflection of legal change in circumstance.  This is the logical long road, leading to many

questions to be answered by District Courts when confronted with two-dismissals.

The second choice is to adopt the precedent of the Ninth Circuit, the current highest prevailing authority in *Moore's*, and find that although the court issued an order stating that Oppold earned an adjudication on the merits, that order was without effect as the court was without jurisdiction to weigh the privities of the parties. The effect of *res judicata* in a third case is generally limited to mooting a claim- having the jurisdictional possibility of erasing the "adjudication on the merits" award from Rule 41(a)(1)(B).

Adopting the rule from *Commercial Space* may provide a method for a Defendant to harass a Plaintiff until a statute of limitations expires- proving paradoxical effect. The effect can only be undone through the temporary but simultaneous suspension and application of *res judicata*. This road is similar to the stairs of M.C. Escher- inviting jurisdictional paradox.

*Buckhannon* defines a "judgment on the merits" as being one way a party may prevail. The court awarded Oppold an adjudication on the merits in an order on the docket of the case. The District Court erred in denying prevailing party status to Oppold through a fallacy of composition. Oppold's adjudication on the merits is the logical equivalent of a judgment

on the merits in *Buckhannon*, a condition not requiring a material alteration test, therefore he prevailed.

The case or controversy presented by FTV was not settled out of court by any means.  The factual determination by the District Court that a voluntary dismissal without prejudice was an adjudication on the merits is sufficient sanctioning and approval reduced to writing.  If *Buckhannon*'s material alteration test is applied, an adjudication on the merits under Rule 41 satisfies the requirements of judicial imprimatur because the change occurred by order of the court.  In the alternative, Oppold's adjudication is sanctioned by Rule 41 itself, and thus the change is judicially sanctioned as used in the context of *Buckhannon*.   Oppold was the prevailing party in the case below because he was awarded an adjudication on the merits- full relief for a copyright Defendant.

## VI.  ARGUMENT

### A.  Did the District Court have subject matter jurisdiction to award Oppold an adjudication on the merits under the two-dismissal rule?

A court has the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises.  *Smith v. GTE Corp.*, 236 F. 3d 1292 (11th Cir. 2001).  Interpretations of Rule 41(a)(1)(B)

are reviewed *de novo*. *Asx Inv. Corp v. Newton*, 183 F. 3d 1265, 1267 (11th Cir. 1999).

While the mechanisms of a first dismissal are well known and ever expansive to a wide variety of manipulations benefiting the Plaintiff, the proper mechanisms after a second unilateral notice of voluntary dismissal without prejudice have never been squarely addressed by this court since the rule's inception in 1936. The leading case on the jurisdictional question is *Commercial Space v. Boeing*. 193 F. 3d 1074 (9th Cir. 1999).

### 1. Rule 41(a)(1)(B) created ancillary jurisdiction to conduct a privity of the parties analysis and enter an adjudication on the merits

If the plaintiff invokes Rule 41(a)(1) a second time for an action based on or including the same claim, the action must be dismissed with prejudice. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). While the Supreme Court has said that it "must" be dismissed with prejudice, it was silent on the mechanism of declaring a document to be an incorrect reflection of change in legal relationship between the parties.

Upon a first dismissal under Rule 41(a)(1)(A)(i) the case is closed and, "[t]here is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play." *American Cyanamid v. McGhee*,

317 F.2d 295, 297 (5th Cir. 1963).  *McGhee* also states, that the "second

notice of dismissal not only closes the file, it also closes the case with

prejudice to the bringing of another."  In any situation where a Rule

41(a)(1)(B) adjudication on the merits results, this statement from *McGhee*-

while technically correct- is not fully developed.    It says nothing of how the

clerk is to close the file, or how to correct a resulting docket entry that is

automatic, permanent, and inaccurate.  *Williams v. Ezell*, 531 F.2d 1261,

1263 (5th Cir. 1976) (first notice of dismissal titled "Motion for Dismissal"

invoking Rule 41(a)(1) without prejudice).

        In the Fifth Circuit before 1981, the proper mechanism for the change

Oppold requested seemed to be a motion for vacatur.  *Pilot Freight Carriers,*

*Inc. v. International Bhd. of Teamsters*, 506 F.2d 914, 915-916 (5th Cir.

1975); *compare Aero-Colours, Inc. v. Propst*, 833 F.2d 51, 52 (5th Cir.

1987).  Currently, the proper mechanism for changing the prejudicial nature

of a notice is unsettled law among the circuits.  The terms vacatur, relief

from, to set aside, to alter, or to amend, are not truly instructive in a situation

where a Defendant is requesting relief that is essentially declaratory in

nature.  The mechanism to determine two dismissals is currently a moving

target propelled by arguments regarding form.  *See Commercial Space*

*Management Co. v. Boeing Co.*, 193 F. 3d 1074, 1076 (9th Cir. 1999)

14

(holding that a Rule 59(e) motion is barred under the two dismissal rule, and that the determination for an adjudication on the merits only becomes ripe when a third case is filed); *contra Rivera v. PNS Stores, Inc.*, 647 F. 3d 188, 196 (5th Cir. 2011) (Finding Rule 59(e) is the exclusive means for changing the prejudicial effect of a voluntary dismissal).

 For a Plaintiff, a first notice without prejudice is a veritable Victorinox solving ninety-nine problems that have never been considered. *Moore's Federal Practice 3d* § 41.11.  For a Defendant seeking finality, peace and relaxation, the mechanism behind the two-dismissal rule is either incredibly elusive, undefined, or under developed.  Precedents and holdings concerning a first unilateral notice of dismissal without prejudice under Rule 41 are considerably slanted toward a Plaintiff- giving a Plaintiff an avenue of escape.  However, Rule 41 was only intended to give a Plaintiff this avenue of escape one time.  *Englehardt v. Bell & Howell*, 299 F. 480, 482 (8th Cir. 1962).  The Plaintiff should bear the burden of unraveling the mistake.  *See e.g.*, *Voluntary Dismissal by Order of the Court*, 48 Notre Dame L. 446 (Mentz, L.)(1972).

A case involving efforts to avoid an award of fees under the Copyright Act, the Fifth Circuit in *Yesh Music* recently found that a Plaintiff who could be relieved of a first notice of voluntary dismissal pursuant to Rule 60(b).

15

*Yesh Music v. Lakewood Church*, No. 12-20520, 2013 WL 4103601 (5th Cir. Aug 14th, 2013)   The Fifth Circuit did not directly address the jurisdiction of the court to decide that Lakewood was not a prevailing party while a third case was already pending.   The dissent relied heavily on the holding in *McGhee*, including its precedent and progeny interpreting the rule before 1981.  As the *Yesh Music* dissent states, a unilateral notice of voluntary dismissal without prejudice has a nature that is automatic and immovable.  When it is an action that is taken by an attorney, he should not be relieved of that mistake.  A first notice eliminates future judicial work, and should actually prevent it except in ancillary matters such as sanctions. A second notice when brought to the attention of the court creates judicial work.

While the permanence or impermanence of a notice of voluntary dismissal is not directly at issue, the jurisdictional question surrounding Rule 41(a)(1)(B) framework that makes logical sense could deepens the split created by *Yesh Music*.   While the result in *Yesh Music* may have been decided correctly on questions of waiver, comparison with the instant case is illustrative of numerous questions.   If the *Yesh Music* court had jurisdiction to decide that a Rule 60(b)(6) motion was applicable, what was the time limit?  Absent a notion of waiver, *Yesh Music* represents a split with the

16

current interpretation of Rule 41(a)(1)(B) in the Eleventh, summed up by the dissent of *Yesh Music*.

Does Oppold have a year to file a 60(b) motion in the case to be relieved from a dismissal without prejudice?  A nearly unlimited time to file a 60(a) motion or request?   What event triggers the "final adjudication"- the filing of the notice itself, or the judicial determination that it is dismissed with prejudice?  Did Oppold receive relief from the order of the District Court dismissing the case without prejudice under Rule 60(b)(4) as a void judgment?  Is it somehow void or without effect under Rule 60(a)?  Does a Defendant or Plaintiff seeking relief from an incorrect docket entry that resounds with finality have 28 days under 59(e)?  *Hertz Corp. v. Alamo Rent-A-Car*, 16 F. 3d 1126 (11th Cir. 1994).

Oppold's case may be distinguished from *Yesh Music* in the very nature of Oppold's two unilateral voluntary dismissals without prejudice and no stipulation, but it raises the same questions of finality.  A Plaintiff filing a second notice of voluntary dismissal will have at least some incentive to cooperate with the Defendant in taking a docket corrective act- the same incentive for response to court action that any participating party has from the outset of a case.

17

### 2. The prevailing Ninth Circuit rule regarding jurisdiction could be adopted, but it creates jurisdictional paradox

Among the district courts, there has been considerable bleed from one dismissal precedent that has applied to situations involving a second unilateral dismissal. In the Ninth Circuit, *Commercial Space* took essentially all jurisdictional result of a first Rule 41(a)(1)(A)(i) voluntary dismissal and applied it to a second Rule 41(a)(1)(A)(i) dismissal. *Commercial Space Management Co. v. Boeing Co.*, 193 F. 3d 1074 (9th Cir. 1999). The Ninth Circuit decided that a second dismissal under Rule 41(a)(1)(A)(i) robs the second court of jurisdiction and requires a third case to determine the privity of the parties and the adjudication. Somehow, the District Courts must suspend all *res judicata* jurisprudence in a third case to allow for entry of judgment rather than dismissal for subject matter jurisdiction. *Commercial Space* should not be adopted unless the court is willing to simultaneously apply and suspend *res judicata* jurisprudence, changing the plain meaning of the two dismissal rule.

Upon a case of first impression the Ninth Circuit took the position that because there was no mechanism under the rules to re-establish jurisdiction over an already resolved matter- a third case must be held to establish privity of the parties and determine an award of fees. Dismissing the concept that

18

the third case wastes judicial economy, *Commercial Space* suggests quite simply that this is the only method. *Id.* at 1080. *Commercial Space* does not adequately address the purpose and intent behind Rule 41(a)(1)(B) in this Circuit. *ASX Inv. Corp. v. Newton*, 183 F. 3d 1265 (11th Cir. 1999).

Oppold was pursued by four or five attorneys representing FTV over a course of nearly five months. The inherent complexity of representation of FTV in this case in relation to the willingly backed claims by Oppold of harassment, fraud, and abuse begs two questions: 1) when it is appropriate for a court to determine that harassment and abuse is taking place and; 2) what is the appropriate mechanism for a Defendant to show evidence of abuse and harassment under the rule?

A third case invites Plaintiff's to possibly obfuscate third actions with intervening transfers and slight variations in causes of actions. *See Ingenuity 13 v. Doe*, 2:12-CV-08333-ODW(JCx), Doc. 130, 2013 WL 1898633 (C.D. Cal. May 6, 2013) (issuing sanctions against Prenda Law for a fraudulently produced assignment in multiple cases) (*pending appeal*). Under the rule of *Commercial Space*, Oppold would have to attend on a third court case. He would have to be served or pay to file a declaratory action. He would have to contact counsel, to sign a new retainer with counsel, to pay counsel, and he would have many questions. Later, he

would have to make a motion for summary judgment, judgment on the pleadings- or if he was patient enough- await a trial on the matter of the relatedness of a previous case with the hopes that a judge will suspend *res judicata* and apply *res judicata* to make a determination regarding the adjudication.  This third case results in further opportunity for a Plaintiff to abuse and harass a Defendant.

While the purpose behind Rule 41 is important, what is equally as important is the need to avoid the paradoxical circumstance that the entry of an adjudication on the merits is barred by claim preclusion or *res judicata*. *See Abrahams v. Hard Drive Productions, Inc.*, 3:12-cv-01006-JCS, Doc. 51, 2012 WL 5499853 (N.D. Ca., Nov. 13, 2012)  (*pending appeal*). *Abrahams* illustrates the jurisdictional paradox of *Commercial Space*.  Hard Drive Productions filed a first copyright case that was voluntarily dismissed without prejudice.  After Hard Drive Productions re-filed their complaint and while the second case was pending, Abrahams followed the rule of *Commercial Space* and filed a third case including a declaratory action for non-infringement requesting fees under the Copyright Act.  Hard Drive Productions filed a notice of voluntary dismissal in the second case and Abraham's declaratory action for non-infringement was dismissed for lack of subject matter jurisdiction.

20

**B.  A privity of the parties analysis and the relatedness of cases is not a justiciable case or controversy sufficient to form a third case**

In order to invoke the power of the federal courts, a party must prove that there is a case or controversy.  *Already v. Nike*, 113 S. Ct. 721, 568 U.S. ____, 184 L. Ed. 2d 553 (2013).  The relatedness of cases and a privity of the parties analysis is not an independent case or controversy nor does Rule 41 give rise to an independent cause of action.  Sanctions are not in themselves a case or controversy, nor is 41(a)(1)(B) a type of sanction, however a currently pending Ninth Circuit case is illustrative of the paradoxical effect of *Commercial Space* and the comparison is an argument by induction.   For this purpose, Oppold's attorney subjects himself to sanctions for his mistakes as is what happens naturally upon his appearance.

Upon the docket of this appeal, Oppold's counsel prepared and filed a Civil Appeal Statement attempting to link a pending Ninth Circuit appeal with a totally unrelated Plaintiff and Defendant.  *Abrahams v. Hard Drive Productions, Inc.*, 13-15889 (9th Cir.) (*pending*).  First Time Videos and Hard Drive Productions- while they maybe share common counsel- do not have readily apparent relationship in any sense of commercial agreement or alter ego.  The cases may bear some striking similarities, but these matters are certainly not the same case.

The unstated jurisdictional question in *Abrahams* is the opposite end
of the same Rule 41 interpretation question posed in Oppold's case.
*Abrahams* invites a causality loop that has already been foreclosed by sound
precedents pertaining to issues that involve two cases.  *See e.g., CSX Transp.
Inc. v. Brotherhood of Maintenance*, 327 F.3d 1309, 1316 (11th Cir. 2003)
(court has jurisdiction to examine claim preclusion).  The decision that a
court has sufficient subject matter jurisdiction to consider the issue of
subject matter jurisdiction represents one endpoint within the paradox.

The other end of that causality loop that has not yet terminated in the
Ninth Circuit allows a Defendant to be very rude and even sinister to a
Plaintiff until the statute of limitations expires.  This is especially true if that
Plaintiff now turned Defendant is a corporation and must hire counsel for
response to all actions.

### 1. Can Abrahams continue to file infinite actions for declaratory relief that will be dismissed for lack of subject matter jurisdiction? Or would his counsel be subject to sanctions?

Operation of the two-dismissal rule in the Ninth Circuit causes what
would be in software code, an infinite loop.  Theoretically, Abrahams under
the rule of *Commercial Space*, could file an infinite number of declaratory

actions of non-infringement seeking an award of attorney's fees under the

Copyright Act until he found a judge to apply the precedent of *Commercial*

*Space*.   To award an adjudication on the merits under *Commercial Space* in

such a situation would also be to break scores of years of claim preclusion

precedent that is already pushed to flexible extremes.  *See For One Litigant's*

*Sole Relief*, 77 Cornell L. Rev. 905 (1991-1992) (Ziff, R.).

The only real procedural mechanism to stop Abrahams from filing

declaratory actions *ad infinitum* is sanctions against him or his attorney.

However, the simple act of filing a complaint would generally not lead to

sanctions under Rule 11 because the complaint would not be filed in bad

faith.  While multiplication under 28 U.S.C. § 1927 may seem appropriate

for issuing sanctions, it could be argued that Abraham's has actually done

nothing to multiply any proceeding through the mere filing of a complaint.

*Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1178-79 (11th Cir. 2005).

## 2.  Abrahams and Oppold are the same controversy of rule interpretation

While neither Abrahams nor Oppold are related to each other in

anyway that they know of, they are similarly situated defendants on the

opposite side of a fractured Rule 41 interpretation surrounding an inaccurate

and permanent second notice of voluntary dismissal without prejudice.   This

kind of document does not adequately reflect any change in legal circumstance. Some mechanism for the correction must exist.

The increasing frequency of second unilateral notice filings are resulting in great variation in Rule 41 interpretation among District Courts. *See Boy Racer v. Williamson*, 2:11-CV-03072, Doc. 17 - Doc. 20. (E.D. Ca.) (Doc. 19) (months following second voluntary dismissal without prejudice, after Defendant filed an answer- minute order to allow 10 days for Defendant to file "opposition" to the Notice).

Assume *Abrahams* and *Oppold* were both decided. *Abrahams* holding affirming a third courts decision that they lacked subject matter jurisdiction under *res judicata* and *Oppold* holding that a court has jurisdiction to award an adjudication on the merits but that it is a change not judicially sanctioned under *Buckhannon*. If such matters are subjected to further review, a clumsy case style would lead to *FTV* and *Abrahams v. Oppold* and *Hard Drive Productions*- even though both Abrahams and Oppold are seeking the same award of fees as a Defendant under the two-dismissal rule. The switch in position is evidence of the paradoxical effect of *Commercial Space*.

While the two cases may be related cases at the next level of review as a matter of controversy, Oppold's attempt to relate the case at this stage is premature because appellate courts may create splits whenever they please.

While the filing of a unilateral notice of dismissal without prejudice may be an action that is taken by an attorney, the possibility of intervening management by the same counsel does not represent a termination point for liability.   The notice of dismissal itself is the "alpha and omega" of both *Abrahams* and *Oppold* by the respective plaintiff's own acts.  *McGhee,* 317 F.2d at 297; *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-634 (1962).

Abrahams appears to- at this moment- represent solely issues of a possible split of Rule 41 interpretation among two wholly separate deciding authorities.   Just as sanctions are not an independent case or controversy, relatedness of cases is not an independent case or controversy.  While it is historically true that a third court decides matters of claim preclusion, it is not logical for a third court to be *required* to hear such matters when a second court is perfectly capable of making the determination.

**C.  Oppold is a prevailing party under *Buckhannon* by his adjudication upon the merits granted by the District Court.**

This court reviews "prevailing party" status *de novo*.  *Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1203 (11th Cir. 2012).   FTV took the position that the cases were not related.  Oppold took the position that the cases were related.  The magistrate weighed the facts, the evidence,

25

and legal argument of both parties.  Oppold's method of confirmation of the

adjudication by motion- and the resulting order- satisfies the requirements of

both classes of possible prevailing party circumstances as put forth by

*Smalbein* and *Buckhannon*.  *Smalbein v. City of Daytona Beach*, 353 F.3d

901, 905 (11th Cir. 2003).

     Under *Buckhannon* and *Smalbein*, the district court erred in applying a

material alteration test.  The District Court error in application of the test

was one of composition.  The court failed to acknowledge the two classes of

enumerated standard in *Smalbein*.

     *Smalbein* requires "(1) a situation where a party has been "'awarded

by the court at least some relief on the merits of his claim'" or (2) a "judicial

*imprimatur* on the change" in the legal relationship between the parties."

*Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003)

(citations omitted).  The second possible class of prevailing party under

*Smalbein*- containing a material alteration test- was the focus of the district

courts order.  The district court should have applied the first class of

prevailing party possibility.

     The term "adjudication on the merits" has been present in Rule 41

since 1936.   The rule has been refined and repositioned, but that specific

verbiage has always been present as something that a Defendant might

26

achieve.  *See Semtek Int'l Inc. v. Lockheed Martin Corp*., 531 U.S. 497, 502

(2001) (interpreting a District Court order dismissing claims "in their

entirety on the merits and with prejudice.")  *Semetk* noted that the term

"judgment on the merits" has gradually undergone change and it has recently

come to be applied to some judgments that do not pass on the substantive

merits of a claim.  *Id.* at 502.  Assuming the jurisdiction of the District Court

was proper, Oppold's circumstance is such that he was literally granted by

the court at least some relief on the merits of his claim.  Full relief, actually,

in the case of a defendant accused of copyright infringement.  *Johnson v.*

*Florida*, 348 F. 3d 1334, 1351-52, fn. 18 (11th Cir. 2003).  Oppold is the

prevailing party because the District Court awarded him an adjudication on

the merits.

Rule 41(a)(1)(A)(i) is a swinging door that gained momentum from

the first exit that it should have built up the potential to strike a Plaintiff with

sufficient force while making a second.  Such matters should be left up to

the courts discretion, and should be viewed more negatively than a motion

for order of dismissal pursuant to 41(a)(2). [1]  Such involuntary dismissals

under 41(a)(2) should serve as a guide to enabling a District Court to enter

---

[1] In terms of game theory, 41(a)(2) would be a forfeit marked as a "win" or "loss" by the judiciary, subject to judicial discretion. Under *Commercial Space* an adjudication on the merits under 41(a)(1)(B) would be a "replay" on issues of *res judicata*.  Current precedent in the Eleventh should be that 41(a)(1)(B) is a Defendant's "win" that is permanent and immovable (except maybe in cases of waiver).  Current interpretation in the Fifth under *Yesh Music* is that a 41(a)(1)(B) is a Defendant's "win" that is possibly subject to being undercut by Rule 60 in a first filed previously dismissed case.

orders necessary and proper and to decide matters equitable to the parties after a judgment based upon the filings in the case.  However, the purpose of Rule 41(a)(1)(B) curbing abuse and harassment should be addressed in the same fashion and with the same jurisdictional privileges as an adjudication on the merits under Rule 41(b).  Most, if not all rules under Rule 41(b) seem appropriate for handling the jurisdictional question of the two-dismissal rule. *Moore's* at § 41.50.

Whether there was a sufficient finding or showing of abuse or harassment or not, FTV's "local counsels" in the *Orlando Case*, repeatedly wanted out- to throw in the towel.  Someone, somewhere continued to give command to sustain the action.  This is indicative of bad faith or improper motivation on behalf of the Plaintiff or its agents.

It seems unlikely that the intended purpose of *Buckhannon*'s dissolution of catalyst theory was to divest the trial court of the opportunity to exercise their discretion in awarding fees when an adjudication on the merits results under any rule.  *Cook v. Randolph County*, 573 F. 3d 1143, 1155 (11th Cir. 2009).  Under such a finding that the two-dismissal rule lacks imprimatur- a Rule 41(a)(1)(B) adjudication would often be preferable to what a judge might decide when presented with a Rule 41(a)(2) motion. *See e.g., Riveria Distributors v. Jones,* 517 F.3d 926, 928 (7th Cir. 2008).

28

The circumstance creates a second escape from imprimatur for the Plaintiff, defeating the purpose of the rule.

Triggering the "adjudication on the merits" provision of Rule 41(a)(1)(B) under circumstances such as Oppold's is *prima facie* evidence of abuse or harassment.   Rule 41 was intended to limit the unilateral voluntary dismissal of a Plaintiff to one instance to curb abuse and harassment. *McGhee* at 298.   Any attempt at unilateral action thereafter, should result in an adjudication on the merits by judicial order.    If this second notice of dismissal was made "with prejudice" would it be signifying that the Plaintiff threw in the towel even harder?  It certainly seems to add finality.  *But see AF Holdings v. Patel*, 2:12-cv-00262, Doc. 14 (N.D. Ga. March 18th, 2013) (not noted anywhere on docket as a second case- second unilateral "notice of voluntary dismissal *with prejudice*").  While the AF Holdings dismissal in *Patel* is correct docket reflection, it is a second unilateral dismissal without judicial oversight.  The question of imprimatur in this sort of circumstance becomes very important, because a Plaintiff raising a white flag a second time can attempt to steal imprimatur away from the court in this fashion.

The reason for a Plaintiff exploiting Rule 41 interpretation is that it is advantageous.   While it obviously does not enable a high level of access to manipulate the courts, it does give the Plaintiff an advantage to obscure their

29

intention sufficiently to have the matter questioned by a Defendant and/or the Judiciary.  *See* Doc. 29 (including a prayer for relief- as if by motion; notice dismissal under "Rule 41(a)(1)").

Facing the possibility of the two dismissal rule in a second case, a Plaintiff making a second run at liability will also have an incentive to fail to state a cause of action.   A Defendant will have no possibility of fee award until they file an answer or a motion for summary judgment- such documents generally premature before proper framing of pleadings or discovery deadlines.   The Plaintiff and Defendant are in unequal bargaining positions from the beginning of the second case, without the filing of an answer or a motion for summary judgment.  *DeliverMed v. Schaltenbrand*, 12-3773, 12-3774, pg. 17, 2013 WL 5524862, (7th Cir. October 7th, 2013) (Defendants have strong presumption in favor of fees to ensure that a meritorious defense is not abandoned where the "cost of vindication exceeds the private benefit to the party" forcing nuisance settlement or forgoing exercise of right.)

The argument that Oppold's adjudication on the merits was not judicially sanctioned fails because it is contradicted by the very context in which it was presented.  It is a material fallacy *tu quoque*.  The act of declaring an adjudication on the merits on the docket represents a change

30

that is judicially sanctioned, reduced to writing, and adopted by the District Court in stark contrast to the final disposition requested by FTV.  Under any definition of imprimatur, a court order is sufficient evidence that the judiciary has sanctioned a particular change in circumstance.

If a material alteration test must be applied and the District Court order awarding an adjudication on the merits is found insufficient judicial sanction on its face, then the rule itself is sufficient.  In the concurring opinion, *Utility Automation 2000 v. Choctawatchee* asked of Rule 68 judgments:  "Is this faint judicial *imprimatur* enough to render a plaintiff "prevailing" as that term has been constructed by *Buckhannon*?"  298 F. 3d 1238, 1250 (11th Cir. 2002).  The term imprimatur is subject to fallacies of amphibology and equivocation.  Among the various federal courts, the contextual possibilities of intended meaning of the word could puzzle an etymologist. [2]

Although both judgments are by operation of rules, Rule 41 is set apart from Rule 68 in that the purposes are distinctly different.  The two dismissal rule was not designed as a place for a Plaintiff to make a second successful escape from judicial oversight or for the prevention of recording a

---

[2] The great variation in meaning of imprimatur seemed to occur in 1968 with *Terry v. Ohio*, 392 U.S. 1. The word after *Terry* has been adopted as a legal term of art sufficiently deviating from its latin roots in meaning, and is now important to many forms of precedent.  Black's Law Dictionary, 4th Edition (1968) (written approval); *Bonner v. City of Pritchard*, 661 F. 2d 1206, 1210 (11th Cir. 1981) (correct latin context); Black's Law Dictionary, 7th Edition (1999) (written approval, act of approval).

"loss" in terms of game theory.  *Thorp v. Scarne*, 599 F.2d 1169, 1177, fn.

10 (2nd Cir. 1979) ("One need not be an expert in game theory to conclude

that plaintiffs tend to dismiss actions that do not look promising while

defendants generally want to obtain an adjudication on the merits in

precisely the same cases.")  Rule 41(a)(1)(B) or any bright line rule should

involve notions of fair play.   Where a Plaintiff in early settlement

negotiation continually raises a monetary demand due to increase in fees,

should a recalcitrant Defendant not be entitled to do the same?  Or must he

file a countersuit, or a third suit, an answer, or a motion for summary

judgment to be entitled to an adjudication on the merits as would be

suggested by *Commercial Space*?  If a Defendant answers or moves for

summary judgment in a second case, the adjudication on the merits can no

longer be awarded.  Plaintiff's right to notice dismissal under the rule would

be cut off.   A Defendant seeking fees is forced to take some sort of action to

obtain an award of fees, but is only aware of this need after a dismissal is

filed.

      The adjudication on the merits is written into rule, drafted and

sanctioned by promulgation of the Supreme Court.  It is only logical that the

rule was supposed to serve some purpose- to allow for some reflection of

legal change in circumstance.  In many instances, a clerk could make the

determination and suggestion- but judicial order will always be required to adequately reflect the change.  Oppold received an adjudication on the merits despite notice and previous order that both seemed to take away the courts jurisdiction.  Oppold's later adjudication had sufficient imprimatur under *Buckhannon* by order of the District Court.

If a clerk were permitted to make such a determination about the relatedness of a previous case, would it not have the same imprimatur as a clerk's default, deciding the truth of the allegations?  Rule 41(a)(1) is said to involve that portion of the rule that deals with reduced judicial authority. While Rule 41(a)(1) may reduce authority, it does not completely divest the court of jurisdiction except upon a first dismissal and never in ancillary matters.   Oppold has prevailed under *Buckhannon* pursuant to Rule 41 itself, as the operation of the rule is a judicially sanctioned material change in legal circumstance.

**D.  Prevailing party status under Rule 41(a)(1)(B) promotes the purposes of the Copyright Act and public policy**

Even though Defendants do not often seek docket correction after a second lawsuit, they are generally at peace. This is evidenced by how incensed a Defendant will become at the prospect of a third suit when they are served- thus leading to our rather stable claim preclusion jurisprudence

*and interpretations of Rule 41. The fact that both *Abrahams* and *Oppold*
exist at the same time may seem like a technological crisis from attorneys
recycling forms to dismiss cases, but instead it is likely just a rare
circumstance occurring when Prenda Law decided on abuse of voluntary
dismissals nationwide in efforts to gain quick settlements.

The clear delineation of Rule 41 will promote the progress of science
and useful arts, as intended in the areas of patent, trademark, and copyright.
*See e.g., Marconi Wireless Co. v. U.S.*, 320 U.S. 1, 35 (1943). The rarity of
the circumstance of a second unilateral notice of voluntary dismissal should
result in very little direct impact on a rights holding Plaintiff who treads
lightly upon Rule 41. The Plaintiff and Defendant will be on notice that the
second case will result in finality if the Plaintiff does not seek judicial
oversight for the dismissal and obtain an order of dismissal without
prejudice. This will have a positive effect on intellectual property litigation
and how it is conducted by those who might be interested in gaining
settlements from nuisance litigation. *DeliverMed* at 17. Such a decision
will benefit the First Amendment under Copyright and innovation under
Patent by curbing abuse of the legal system.

For any litigant, an adjudication on the merits earned under any rule
should entitle them to prevailing party status. This should be true for a

Defendant every time a Plaintiff throws in the final towel by second unilateral notice of voluntary dismissal.   Under the American Rule, the reasonableness of any possible fee will be up to the discretion of the court. Like the necessarily low fees of a Plaintiff upon default, the low fees of a Defendant under the two-dismissal rule will be subject to haircuts, multipliers, and all external notions of reasonability.  While the impact may not be direct or immediate, the decision should result in a restoration of balance within Rule 41- curbing future abuses of voluntary dismissals as intended by the Rule.

## VII.  CONCLUSION

*Commercial Space* presents a jurisdictional paradox.  In order to adopt the rule of *Commercial Space*, *res judicata* would need to be both suspended and applied in a third case to determine the correct reflection of the legal change in circumstances.  Assuming momentarily that the District Court did not confer any judicially sanctioned change on the relationship- under *Commercial Space* the change will be reflected by summary judgment or judgment on the pleadings in the third case.  Affirming the District Court's holding will mean that in the Eleventh Circuit no judicial imprimatur under *Buckhannon* exists when the two-dismissal rule is triggered, in contrast to the Ninth under *Commercial Space*.

Unlike a first notice of voluntary dismissal without prejudice, a second voluntary dismissal without prejudice does more than closes a file- it closes the entire matter except ancillary issues.  It is sensible that a judge be permitted discretion to award statutory or contractual fees in the event of a second notice of voluntary dismissal without prejudice under Rule 41(a)(1)(A)(i).   An accurate reflection of the adjudication on the merits in that limited situation is all that is required for prevailing party status. Because the Plaintiff has twice executed unilateral dismissals without judicial oversight- an adjudication on the merits is the result.

In cases under the Copyright Act, where a Defendant with a decent defense can hope for no more at the end than to prevail and break even on what they paid their counsel, a District Court is not deprived of discretion to award fees in a situation where a unilateral dismissal triggers a rule designed to curb abuse of unilateral dismissals.

If *Buckhannon* is applicable as stated by the District Court, copyright Defendants and copyright Plaintiffs will never be fairly positioned in the beginning of a case.  To restore the balance of the parties in these early stages, the corresponding consequence should be that a copyright Plaintiff should be denied fees if they obtain a default.

36

However, because the fees in the very beginning of a case are reasonable, they should be awarded as a matter of course upon a determination of reasonableness- whether the Defendant or the Plaintiff prevails.  The District Court weighed the arguments of the Plaintiff and Defendant regarding the relatedness of a previous case and entered an order stating that Oppold earned an adjudication on the merits and found another order void or without effect.

Since its inception in the current form as a Rule of Civil Procedure, there is an implication of the nature, intent, and purpose of Rule 41(a)(1)(B). Under this particular adjudication on the merits, a District Court should not be denied the discretion to award the fullest relief possible, with additional special relief that could be granted to a particularly aggrieved Defendant. This class of Defendants should include Oppold who after a year from the event that was supposed to cause an "automatic" adjudication on the merits, is still unsure that the change in legal relationship has been properly recorded upon the docket of a court of competent jurisdiction.

## VIII.  REQUEST FOR RELIEF

1.  If the Court finds that the District Court lacked jurisdiction to enter an order awarding him an adjudication on the merits, Oppold requests the Court enter an order setting aside and finding without effect or void the

37

entire docket of the District Court that occurred after Plaintiff's second unilateral notice of dismissal, including the order granting an adjudication on the merits.  Oppold asks the court set aside the judicial work of weighing the privities of the parties and relatedness of cases, so he may be permitted to file a third case.

2.  In the alternative, the Appellant, Paul Oppold, requests that this court reverse and remand the order of the District Court, with direction to find that Oppold is the prevailing party, and for further determination on whether a reasonable fee should be granted in the Court's discretion under the factors of a prevailing Defendant under the Copyright Act as set out in *Fogarty v. Fantasy,* 510 U.S. 517 (1994)  and *MiTek Holdings, Inc. v. Arce Eng. Co.*, 198 F. 3d 840 (11th Cir. 1999) and for further filings or hearings as the case may permit.

Respectfully submitted,

Graham W. Syfert, Esq.,P.A.

By: s/ Graham W. Syfert
Florida Bar #39104
Georgia Bar #881027

## CERTIFICATE OF COMPLIANCE

In compliance with Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned counsel hereby certifies that this brief is typed in 14-point Times New Roman and complies with the type-volume limitation of the Rule, containing 9557 words, excluding those sections of the brief that do not count toward that limitation, in accordance with Rule 32(a)(7)(B)(iii) and 11th Circuit Rule 32-4 as determined by the word processing system used to prepare the brief.

s/ Graham W. Syfert

Graham W. Syfert

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 5th day of December, 2013, I

electronically filed Paul Oppold's brief as Appellant with the Clerk of Court.

In addition, the original and six copies of the foregoing were filed with the

Clerk of Court via UPS and one copy of the foregoing was sent by email and

UPS to counsel for Plaintiff:

> John Ley, Clerk
> U.S. Court of Appeals for the 11th Circuit
> 56 Forsyth St. N.W. Atlanta, Georgia 30303
>
> Friedland Vining, P.A.
> David K. Friedland & Jaime Rich Vining
> 1500 San Remo Ave, Suite 200
> Coral Gables, FL 33146

By: s/ Graham W. Syfert
Graham W. Syfert
Attorney at Law